**PSYCHIATRIC CARE DAY HOSPITAL CENTER IN BIRMINGHAM, INC.,**
Plaintiff,

v.

**Donna K. SHALALA, Secretary of the Department of Health and Human Services, Defendant.**

Civ. A. No. 94–C–2731–S.

United States District Court,
N.D. Alabama,
Southern Division.

Nov. 17, 1994.

Donald R. Harris, Jr., Birmingham, AL and Brian W. Shaughnessy, Washington, DC, for plaintiff.

James G. Gann, III and Walter Braswell, Acting U.S. Atty., U.S. Attorney's Office, Birmingham, AL, for defendant.

## MEMORANDUM OF OPINION ON MOTIONS FOR PRELIMINARY INJUNCTIVE RELIEF

CLEMON, District Judge.

■ Plaintiff Psychiatric Care Day Hospital Center in Birmingham, Inc., ("the Cen-

ter") seeks to enjoin defendant Donna K. Shalala, as Secretary of the Department of Health and Human Services ("the Secretary") from suspending its Medicare reimbursement payments. In order to obtain preliminary injunctive relief, the Center must prove (1) irreparable injury, (2) a tilting of the equities in its favor, (3) a likelihood of success on the merits of its claim, and (4) that the public interest will not be disserved by the granting of injunctive relief.

■ The Center has failed to carry its burden of proof.

### I.

The Center is an Alabama non-profit corporation which provides psychiatric care services. It has operated a year and a half and it employs approximately 85 persons. It services between 140–200 patients daily, most of whom are referred by state mental health facilities, boarding homes, and nursing homes. Its patients have varying degrees of mental, emotional, and physical problems. It is the only licensed psychiatric day hospital and the only 24–hour emergency psychiatric facility in Alabama. For most of the services rendered to its patients, the Center is reimbursed by Medicare, which is administered by the Secretary.

On October 27, 1994, agents of the Federal Bureau of Investigation ("FBI") executed a search warrant on the Center's premises. They seized its computer systems and programs, bank records, personnel files, complete patient medical records, treatment plans, certification records—in short, all of the Center's business, operational, and organizational records. While the FBI still retains custody of these original records, it has made and continues to make copies available to the Center.

Upon inquiry following the FBI seizure, Blue–Cross Blue–Shield of Alabama ("Blue Cross"), the Secretary's intermediary, informed the Center via phone that its Medicare reimbursement payments were being suspended because of the seizure. This is the only notice received by the Center. Officials of the Center have been unable to ob-

tain from Blue Cross any further explanation. As the Court had sealed the affidavit on which the search warrant was based, the Center's officials have been unaware of the basis of the warrant.

Since the Center is a cost reimbursement Medicare provider, it cannot continue to operate if its payments are suspended for more than a month or so. It last received a reimbursement payment in mid-October. A small reimbursement of less than $4,000 was processed for payment in early November, but the payment was suspended pursuant to the decision of the Secretary, acting through Blue Cross as her alter-ego and intermediary.

In consultation with Blue Cross, the Secretary's Health Care Finance Administration ("HCFA"), Atlanta Office, made the decision to suspend the Center's payments on October 28.

The Center has submitted over $600,000 in claims to intermediary Blue Cross for services already rendered. Virtually all of these claims are being reviewed by Blue Cross's Medicare Fraud Unit and additional documentation is being required from the Center. It is unlikely that this review process will be completed within the next couple of months.

At the time of the hearing on the Center's motions for preliminary relief, the affidavit for the search warrant remained sealed. The United States has now obtained the requisite court order unsealing the affidavit. The affidavit has been presented to the Court and presumably to counsel for the Center. Indubitably, the affidavit contains reliable information that the Center's operations may involve fraud and/or willful misrepresentation.

## II.

Under the applicable regulations, where an intermediary such as Blue Cross "... has reliable information that the circumstances giving rise to the need for a suspension of payments involves fraud or willful misrepresentation ... the intermediary ... may suspend payments without first notifying the provider or other supplier of an intention to suspend payments." 42 C.F.R. § 405.371(b)

(1993). Thus, all that the Center is entitled to is (1) a notice that in fact its payments have been suspended and (2) the reasons for the suspension.

The Court had some concern over whether the required suspension notice given by an intermediary must be in writing. That concern has been allayed although other sections of the regulations specify that certain suspension notices must be in writing. *See, e.g.,* 42 C.F.R. §§ 1001.2001–2002 (1993). There is no such specification for a § 371(b) notice. The Center has been appropriately notified of the suspension of payments by Blue Cross.

While the reason for the suspension had not been sufficiently articulated to the Center as of the date of the hearing, its officials were told that the suspension was based on the FBI seizure. The basis of the seizure was unknown to the Center until the affidavit was unsealed several days ago. Now the Center and the community know the contents of the affidavit, and those contents constitute legally valid reasons for the suspension.

In conclusion, the Center has received all of its procedural entitlements under the Medicare provider regulations.

## III.

The Center has carried its burden of proving irreparable harm. The very probable result of the suspension of its payments will be the closing of the Center. The Center has also carried its burden of showing that the harm it will suffer by the denial of an injunction vastly outweighs the injury to be suffered by the Secretary if an injunction is granted. If these were the only factors to be considered, the preliminary relief would be granted. But the Center must prevail on each of the two other considerations.

As found and concluded earlier, the Center has not proved a substantial likelihood of prevailing on the merits of its claim that the suspension of reimbursement payments violates the applicable Medicare regulations.

On the one hand, the public interest is served by the continued operation of the only licensed psychiatric day hospital in the State. The Center serves a considerable number of

mentally and emotionally disturbed Alabama citizens whose needs may otherwise go unmet. Based on the scanty evidence before the Court, the public has a definite need for precisely the kind of services which the Center, according to its Articles of Incorporation, was designed to provide.

On the other hand, while the Center is presumptively innocent of all criminal offenses, if it is subsequently proved that the Center has received Medicare payments to which it was not entitled, it is by no means clear that the Secretary will ever be able to recoup the overpayments or improper payments to the Center.

On balance, the Court concludes that the Center has not shown that the public interest will be served by the granting of preliminary injunctive relief.

For the reasons set forth herein, plaintiff's motions for preliminary injunctive relief shall be denied.